IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MELISSA CUMMINGS
o/b/o CAROL K. CAMPBELL,
deceased,

   Plaintiff,

v.           Civil Action No. 5:05CV109
                  (STAMP)
LINDA S. McMAHON,[1]
Acting Commissioner of
Social Security,

   Defendant.


**MEMORANDUM OPINION AND ORDER
AFFIRMING AND ADOPTING REPORT AND
RECOMMENDATION OF MAGISTRATE JUDGE
AND OVERRULING PLAINTIFF'S OBJECTIONS**

I. Procedural History

The plaintiff, Carol K. Campbell,[2] filed an action in this

Court on August 2, 2005, seeking judicial review of an adverse

decision by the defendant, Commissioner of Social Security

Administration, pursuant to 42 U.S.C. § 405(g). The case was

referred to United States Magistrate Judge John S. Kaull for

submission of proposed findings of fact and recommendation for

---

[1]Linda S. McMahon became the Acting Commissioner of Social
Security effective January 22, 2007, to succeed Jo Anne B.
Barnhart. Under Federal Rule of Civil Procedure 25(d)(1) and 42
U.S.C. § 405(g), Linda S. McMahon is automatically substituted as
the defendant in this action.

[2]Carol K. Campbell, the plaintiff, was killed in an automobile
accident on August 6, 2005. By order of this Court, her daughter,
Melissa Cummings, was permitted to substitute for the plaintiff as
a party to this action.

disposition pursuant to 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B). The plaintiff filed a motion for summary judgment on February 6, 2006. The Commissioner filed a cross-motion for summary judgment on March 8, 2006. Magistrate Judge Kaull considered the plaintiff's motion for summary judgment and the Commissioner's motion for summary judgment and submitted a report and recommendation. In his report, the magistrate judge recommended that the plaintiff's motion for summary judgment be denied and that the Commissioner's motion for summary judgment be granted. Upon submitting this report, Magistrate Judge Kaull informed the parties that if they objected to any portion of his proposed findings of fact and recommendation for disposition, they must file written objections within ten days after being served with a copy of the report. The plaintiff submitted timely objections to the magistrate judge's report and recommendation.

Pursuant to 28 U.S.C. § 636(b)(1)(C), the district court must conduct a <u>de novo</u> review of any portion of the magistrate judge's recommendation to which an objection is made. As to those portions of the report to which no objection is made, the magistrate judge's findings and recommendations will be upheld unless they are "clearly erroneous."

## II. <u>Facts</u>

Plaintiff, Carol K. Campbell, filed an application for Disability Insurance Benefits ("DIB") on May 30, 2000, and for

Supplemental Security Income ("SSI") on December 27, 2000, alleging disability since December 17, 1999, due to neck, shoulder, arm and back pain, arthritis, headache, disc degeneration, right hand problems, and inability to deal with the public. The state agency denied the plaintiff's application initially and on reconsideration. Plaintiff requested a hearing, which Administrative Law Judge ("ALJ") Steven Slahta held on March 21, 2002 in Bridgeport, West Virginia. At the hearing, the plaintiff, represented by counsel and Eugene Czuczman, a vocational expert ("VE") testified. On May 15, 2002, the ALJ entered a decision finding that the plaintiff was not disabled within the meaning of the Act. On February 14, 2003, the Appeals Council denied the plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.

The plaintiff then filed the present action.

## III. <u>Applicable Law</u>

### A. <u>Standard of Review</u>

In conducting a <u>de novo</u> review under 42 U.S.C. § 405(g), this Court must determine: (1) whether the ALJ applied the correct legal standard and (2) whether substantial evidence in the record supports the ALJ's decision. <u>Hayes v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "more than a mere scintilla," and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consol. Edison</u>

Co. v. NLRB, 305 U.S. 197 (1938).  In determining whether the record supports the ALJ's findings, a court must consider "whether all of the relevant evidence has been analyzed and whether the ALJ has sufficiently explained his rationale in crediting certain evidence." Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998).

B.    Summary Judgment

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth

4

specific facts showing that there is a genuine issue for trial."
Id. at 256. "The inquiry performed is the threshold inquiry of
determining whether there is the need for a trial -- whether, in
other words, there are any genuine factual issues that properly can
be resolved only by a finder of fact because they may reasonably be
resolved in favor of either party." Id. at 250; see also
Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir.
1979)(Summary judgment "should be granted only in those cases where
it is perfectly clear that no issue of fact is involved and inquiry
into the facts is not desirable to clarify the application of the
law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394
(4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule
56(c) mandates the entry of summary judgment, after adequate time
for discovery and upon motion, against a party who fails to make a
showing sufficient to establish the existence of an element
essential to that party's case, and on which that party will bear
the burden of proof at trial." Celotex, 477 U.S. at 322. In
reviewing the supported underlying facts, all inferences must be
viewed in the light most favorable to the party opposing the
motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475
U.S. 574, 587 (1986).

## IV.  Discussion

In her motion for summary judgment, the plaintiff contends that: (1) the ALJ failed to conduct an appropriate evaluation of listed impairments and abused his discretion in failing to call a medical expert; (2) the Appeals Council accepted evidence which was new and material, and failed to review the case, or even to comment upon much of the new evidence, which demonstrated that the decision of the ALJ was not supported by substantial evidence; and (3) the ALJ failed to first make a specific finding on a function-by-function basis before arriving at the mental residual functional capacity ("RFC").

In her motion for summary judgment, the Commissioner contends that substantial evidence supports the ALJ's RFC assessment and the ALJ's determination regarding the plaintiff's physical and mental limitations.  The Commissioner also asserts that the ALJ's Step Three listing finding is supported by substantial evidence. Finally, the Commissioner contends that the newly submitted evidence is not new and material evidence warranting a remand.

The magistrate judge found that substantial evidence supports the ALJ's decision denying the plaintiff's applications for DIB and for SSI.  Accordingly, the magistrate judge found that the defendant's motion for summary judgment should be granted and the plaintiff's motion for summary judgment should be denied.

The plaintiff filed objections to:

(1) "the findings on pages 34-38 that the ALJ's determination that Plaintiff's condition did not equal a listing, in particular Listing 14.09, was supported by substantial evidence, that Ruling **SSR 99-2p** and **SSR 96-6p** did not pertain to the case, and that the ALJ was not under an obligation to obtain medical expert testimony."

(2) "the findings of the Magistrate Judge on pages 38-45 that new evidence submitted to the Appeals Council did not undermine the ALJ's credibility determination and that substantial evidence supported the Appeals Council determination that the new evidence would not reasonably have changed the ALJ's decision."

(3) "the finding of the Magistrate Judge on pages 45-49 that the ALJ's mental RFC was in compliance with **SSR 96-8p** and that his mental RFC took into account all of the functional limitations supported by the record."

(Pl.'s Objection at 1.)

A.    Listed Impairments

In her motion for summary judgment, the plaintiff argues that the ALJ failed to conduct an appropriate evaluation of listed impairments and abused his discretion in failing to call a medical expert.

The magistrate judge found that there was no requirement, under Social Security Ruling ("SSR") 96-6p, SSR 99-2p or in general, that the ALJ obtain medical expert opinion in this civil action.    The magistrate judge found that substantial evidence supports the ALJ's determination that the plaintiff did not meet or medically equal a listed impairment.    The plaintiff filed objections to the magistrate judge's recommendation regarding the plaintiff's listed impairments.    Specifically, the plaintiff objects to the findings that the ALJ's determination that the

plaintiff's condition did not equal Listing 14.09 was supported by substantial evidence, that SSR 99-2p and SSR 96-6p were not applicable to this action, and that the ALJ was not under an obligation to obtain medical expert testimony. Because the plaintiff filed objections, this Court will conduct a de novo review.

As the magistrate judge noted there is no listing for fibromyalgia, to which the plaintiff references. The Regulation, 20 C.F.R., Pt. 303, Subpt. P, App. 1, § 1.00(H)(4), provides that "in any case in which an individual has a medically determinable impairment that is not listed, an impairment that does not meet the requirements of a listing, or a combination of impairments no one of which meets the requirements of a listing, we will consider medical equivalence." The ALJ found the most appropriate listing for evaluating the plaintiff's fibromyalgia was Listing 14.09, which is inflammatory arthritis. This Court notes that the plaintiff herself referred to Listing 14.09D.

Listing 14.09 provides as follows:

14.09 *Inflammatory arthritis.* Documented as described in 14.00B6, with one of the following:

1.A. History of joint pain, swelling, and tenderness, and signs on current physical examination of joint inflammation or deformity in two or more major joints resulting in inability to ambulate effectively or inability to perform fine and gross movements effectively, as defined in 14.00B6b and 1.00B2b and B2c;

or

B. Ankylosing spondylitis or other spondyloarthropathy, with diagnosis established by findings of unilateral or bilateral sacroiliitis (e.g., erosions or fusions), shown by appropriate medically acceptable imaging, with both:

1.   History of back pain, tenderness, and stiffness, and

2.   Findings on physical examination of ankylosis (fixation) of the dorsolumbar or cervical spine at 45° or more of flexion measured from the vertical position (zero degrees);

or

C.   An impairment as described under the criteria in 14.02A.

or

D.   Inflammatory arthritis, with signs of peripheral joint inflammation on current examination, but with lesser joint involvement than in A and lesser extra-articular features than in C, and:

1.   Significant, documented constitutional symptoms and signs (e.g., fatigue, fever, malaise, weight loss), and

2.   Involvement of two or more organs/body systems (**see 14.00B6d**).  At least one of the organs/body systems must be involved to at least a moderate level of severity.

or

E.   Inflammatory spondylitis or other inflammatory spondyloarthropathies, with lesser deformity than in B and lesser extra-articular features than in C, with signs of unilateral or bilateral sacroiliitis on appropriate medically acceptable imaging; and with the extra-articular features described in 14.09D.

(Emphasis added).  Listing 14.00B6d further provides:

d.   As in 14.02 through 14.06, extra-articular features of an inflammatory arthritis may satisfy the criteria for a listing in an involved extra-articular body system. Such impairments may be found to meet a criterion of 14.09C. Extra-articular impairments of lesser severity should be evaluated under 14.09D and 14.09E. Commonly

occurring extra-articular impairments include keratoconjunctivitis sicca, uveitis, iridocyclitis, pleuritis, pulmonary fibrosis or nodules, restrictive lung disease, pericarditis, myocarditis, cardiac arrhythmias, aortic valve insufficiency, coronary arteritis, Raynaud's phenomena, systemic vasculitis, amyloidosis of the kidney, chronic anemia, thrombocytopenia, hypersplenism with compromised immune competence (Felty's syndrome), peripheral neuropathy, radiculopathy, spinal cord or cauda equina compression with sensory and motor loss, and heel enthesopathy with functionally limiting pain.

This Court finds that the plaintiff does not meet the requirements set forth in Listing 14.09 because the plaintiff does not have an impairment that involves "two or more organ body systems, . . . at least one of which must be involved to at least a moderate level of severity." (Listing 14.09; Report and Recommendation 36.) In her objections, the plaintiff does not provide any evidence that her condition equals the listing in 14.09. In her motion for summary judgment, the plaintiff had argued that she had a mental impairment, which is a second body system listed in 14.02. This Court notes that Listing 14.09 does not refer to 14.02. Instead, Listing 14.09 refers to 14.00B6d.

The plaintiff does not cite in her motion for summary judgment or in her objections any case or law which states that a mental impairment is an "organ/body system" relative to Listings 14.09 or 14.00B6d. This Court has no evidence that the plaintiff's fibromyalgia involves "two or more organs/body systems," one of which must be of at least moderate severity. Thus, this Court

finds that substantial evidence supports the ALJ's determination that the plaintiff does not meet or medically equal Listing 14.09.

The plaintiff further objects that the magistrate judge's finding that the ALJ was not under an obligation to obtain medical expert testimony. In her motion for summary judgment, the plaintiff cites SSR 96-6p, which provides, in pertinent part:

> The signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) or SSA-832-U5 or SSA-833-U5 (Cessation or Continuance of Disability or Blindness) ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review. Other documents, including the Psychiatric Review Technique Form and various other documents on which medical and psychological consultants may record their findings, may also ensure that this opinion has been obtained at the first two levels of administrative review.

> <u>When an administrative law judge or the Appeals Council finds that an individual's impairment(s) is not equivalent in severity to any listing, the requirement to receive expert opinion evidence into the record may be satisfied by any of the foregoing documents signed by a State agency medical or psychological consultant. However, an administrative law judge and the Appeals Council must obtain an updated medical opinion from a medical expert in the following circumstances</u>:

>> When no additional medical evidence is received, <u>but in the opinion of the administrative law judge or the Appeals Council</u> the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or

>> When additional medical evidence is received that <u>in the opinion of the administrative law judge or the Appeals Council</u> may change the State agency medical or psychological

> consultant's finding that the impairment(s) is
> not equivalent in severity to any impairment
> in the Listing of Impairments.
>
> When an updated medical judgment as to medical
> equivalence is required at the administrative law judge
> level in either of the circumstances above, the
> administrative law judge must call on a medical expert.
> When an updated medical judgment as to medical
> equivalence is required at the Appeals Council level in
> either of the circumstances above, the Appeals Council
> must call on the services of its medical support staff.

(emphasis added). The circumstances of this civil action does not meet any of the requirements of SSR 96-6p. Further, the plaintiff's reliance on SSR 99-2p, the listing for Chronic Fatigue Syndrome ("CFS"), is misplaced. Although, as the plaintiff notes, footnote 3 to SSR 99-2p <u>refers</u> to fibromyalgia. The entire footnote states:

> There is considerable overlap of symptoms between CFS and
> Fibromyalgia Syndrome (FMS), but individuals with CFS who
> have tender points have a medically determinable
> impairment. Individuals with impairments that fulfill
> the American College of Rheumatology criteria FMS (which
> includes a minimum number of tender points) may also
> fulfill the criteria for CFS. However, individuals with
> CFS who do not have the specific number of tender points
> to establish FMS, will still be found to have a medically
> determinable impairment.

This Court finds that there was no requirement under either SSR 96-6p or SSR 99-2p that the ALJ obtain a medical expert opinion in this civil action. The plaintiff also has not provided, in her motion for summary judgment or her objections, any case or legal principle that requires the ALJ to obtain a medical expert opinion. Thus, this Court finds that substantial evidence supports the ALJ's

12

determination that the plaintiff did not meet or medically equal a listed impairment.

C.  Evidence Before the Appeals Council

In her motion for summary judgment, the plaintiff argues that the Appeals Council "accepted evidence which was new and material, and failed to review the case, or even to comment upon much of the new evidence, which demonstrated that the decision of the ALJ was not supported by substantial evidence." (Pl.'s Mot. for Summ. J. at 14.)  The magistrate judge found that substantial evidence supports the ALJ's determination that the plaintiff's statements regarding her impairments and limitations caused by those alleged impairments were not credible.  The magistrate judge also found that substantial evidence supports the Appeals Council's determination that the new evidence would not reasonably have changed the ALJ's decision.  The plaintiff objects to these findings by the magistrate judge that the new evidence submitted to the Appeal Council's did not undermine the ALJ's credibility determination and that substantial evidence supported the Appeals Council's determination would not reasonably have changed the ALJ's decision.  Thus, this Court will conduct a de novo review.

Pursuant to 20 C.F.R. § 404.970(b), the Appeals Council shall consider evidence submitted with a request for review if the evidence is new, material, and relates to the period on or before the dates of the ALJ's decision.  Evidence is material if there is

a reasonable possibility that the new evidence would have changed the outcome.  <u>Wilkins v. Sec'y, Dep't of Health and Human Serv.</u>, 953 F.2d 93, 96 (4th Cir. 1991).  Evidence is not "new" if other evidence specifically addresses the issue.  <u>See</u> <u>id.</u> at 96.

Here, the Appeals Council considered evidence submitted by the plaintiff after the ALJ's decision of May 15, 2002.  The evidence included: a neurodiagnostic report dated October 4, 2002; a medication list dated September 16, 2002; office notes of Kenneth Seen, M.D. dated March 29, 2002-September 25, 2002; the psychological report of psychologists Janice Blake, M.A. and John J. Kampsnider. Ph.D. dated October 3, 2002; a report from Dr. Seen dated November 8, 2002; and treatment summaries from psychologists Blake and Kampsnider dated October 2002 and January 2003.  (Tr. at 12-13.)  The Appeals Council also considered that the plaintiff had been found disabled as of October 3, 2002, the date of the report of psychologists Blake and Kampsnider.  The Appeals Council found that the new evidence did not provide a basis for changing the ALJ's decision.  The Appeals Council explained that the October 3, 2002 finding of disability was based on the psychologists Blake and Kampsnider psychological evaluation, but that there was no evidence to support a finding of disability prior to that date.  This Court has reviewed the record as a whole, including the new evidence, pursuant to <u>Wilkins</u>, 953 F.2d at 93.

In her motion for summary judgment, the plaintiff argues that the ALJ did not include any limitations on the upper extremities in his RFC and this "should cause a remand." (Pl.'s Mot. for Summ. J.) This Court disagrees with the plaintiff's arguments for the following reasons: First, the neurodiagnostic report was dated October 4, 2002, seven months after the administrative hearing, and five months after the ALJ's decision. Second, the report states only that "[t]here is electrodiagnostic evidence for bilateral moderate carpal tunnel syndrome." (Tr. Ex. AC-1.) Even if this is considered an actual diagnosis, and not just "evidence of" carpal tunnel syndrome, a mere diagnosis of a condition is not enough to prove disability. There must be a showing of related functional loss. See Gross v. Heckler, 785 F.2d 1163 (4th Cir. 1986). There is no diagnosis of carpal tunnel syndrome in the record prior to this date. Further, the plaintiff's Tinel's sign and Phalen's sign, both of which are tests for carpal tunnel syndrome, were negative just prior to the neurodiagnostic testing. Although the plaintiff at times reported weak right hand grip, George Zakaib, M.D. found that her grip strength and sensation were good on November 7, 2001. November 7, 2001 was only a few months prior to the administrative hearing.

This Court further notes that the same neurodiagnostic report states that the "EMG exam revealed no evidence of denervation. The

patient did have total numbers which could be consistent with deconditioning and/or decreased effort." (Tr. 530).

Finally, even if the plaintiff did have carpal tunnel syndrome at the relevant time, and even if it caused functional limitations, the VE testified that there would still be a significant number of jobs available in the national and regional economy. He testified that the light-duty jobs and the job of document preparer would be ruled out, but that would leave available the sedentary jobs of surveillance system monitor with 4,000 jobs regionally and 200,000 jobs nationally and type copy examiner with 850 jobs regionally and 90,000 jobs nationally. Thus, this Court finds that there are a significant number of jobs available to the plaintiff.

Plaintiff next argues that the psychological interview by psychologists Blake and Kampsnider "was substantially similar to the report of Wilda Posey, M.A. and L. Andrew Steward, Ph.D. and documented severe psychotic symptoms, long-standing, some originating in childhood." The magistrate judge stated that disability was awarded plaintiff as of the date of the report of psychologists Blake and Kampsnider, but finds that substantial evidence supports the Appeals Council's determination that this report and the award of benefits as of five months after the ALJ's decision would not have reasonably changed the ALJ's decision in this matter.

First, the plaintiff argues in her motion for summary judgment that the interview by psychologists Blake and Kampsnider was substantially similar to the report of psychologists Posey and Steward, and documented "severe psychotic symptoms, long-standing, some originated in childhood." (Pl.'s Br. at 14.) The ALJ, however, noted that the plaintiff's Minnesota Multiphasic Personality Inventory ("MMPI"), which is a personality test, profile was considered invalid by Posey and Steward due to "the validity scales [being] elevated." (Tr. 490.) The ALJ also noted that this was the <u>third</u> MMPI profile that was considered invalid, all by different psychologists. This Court also notes that the only "tests" psychologists Blake and Kampsnider administered to the plaintiff were the Beck Depression Inventory and the Rotter Incomplete Sentences Blank, both of which are subjective in nature, and therefore dependent on the test-taker's credibility.

Plaintiff told psychologists Posey and Steward that she was aggravated due to having "to fight and go through so much hell to get Social Security, which is basically my money that was taken from me every payday." (Tr. 480.) The ALJ noted that at the February 2002 psychological evaluation, just one month before the scheduled hearing, the plaintiff for the first time reported having multiple personalities and psychic abilities. She told the psychologists she had been examined by "numerous psychiatrists and psychologists and numerous counselors" and reported that she did

17

not "need counseling." (Tr. 485.) She stated she knew when "the 'other personality' was in control." (Id.)

When asked at the administrative hearing why she never told the "numerous psychologists and numerous counselors,"[3] she had seen previously about "things in that report that didn't show up anywhere in any of the other examinations that were done," the plaintiff testified: "Well, because I've told her [Mrs. Blake] a couple of things that I never told anyone else. I mean it was just -- she really -- I guess it was really one of those bad, depressing days, it just kind of slipped out of my mouth before I thought." (Tr. 591.) Plaintiff then testified:

. . .

> I used [to] think that I was maybe a little psychic, but maybe not. I'm not really psychic, but it's just like I see things sometimes. I missed -- you know, I get so tired of hearing people tell me that's stupid; they don't believe me. And I believe in -- everybody has their own beliefs, okay? I believe that -- you know, there is -- I believe -- I mean -- we always say that -- I believe that right now, in here in this room with us, that there is people standing beside of us. I believe in the supernatural. I'm maybe more acceptable [sic] to it, and yes, I have seen -- I have known when -- right before people have died before anybody's called and told me. I've have known when something has been going to happen. And yes, I have seen things. I've done that since I was a kid as far as seeing things. And I used to -- we used to -- you know, when you're a kid, you just kind of put it off to, well, the house is haunted.

Id.

---

[3]The plaintiff reported to William Fremouw, Ph.D. in 2000 that she had "no history of counseling." (Tr. 370.)

Counsel asked the plaintiff if she had been embarrassed to talk to people about her psychic abilities and the plaintiff explained that she was not embarrassed, but she got tired of people saying "well, you're crazy because you see things like this." (Tr. 24-34.)

In addition to the new reports of hallucinations, psychic abilities and multiple personalities, the plaintiff also told psychologists Posey and Steward that her father physically and emotionally abused her when she was a child; she was sexually abused by an uncle; and she lived "a lot" with her aunt and grandmother. (<u>Id.</u>)

Plaintiff argued that her "severe psychotic symptoms" were "long-standing, some originating in childhood." (<u>Id.</u>) Yet W. Joseph Wyatt, Ph.D. found in 1991 that plaintiff had no psychosis, delusions, hallucinations, or bizarre thoughts. (Tr. 311.) In January 1992, Charles Weise, M.D. found that the plaintiff did not have any psychiatric impairment. In February 1992, the plaintiff told Philip Robertson, M.D. that her childhood was "all right" and she was "not mistreated." (Tr. 324.) Plaintiff further stated that she was "close to her mother" although her father was "aggravating." (<u>Id.</u>) Dr. Robertson found that the plaintiff had no psychotic symptoms. In August 1992, the plaintiff told psychologist, Ralph Smith, Jr., M.D., that she had a "normal childhood without any abuse or neglect." (Tr. 328.) In 2000,

19

William Fremouw, Ph.D. found that the plaintiff had no hallucinations or illusions and her judgment was normal.

In July 2002, two months after the ALJ's unfavorable decision, the plaintiff told her treating physician that she was "quite discouraged secondary to Social Security rejection . . . ." (Tr. 535.) She felt "more significantly depressed." (Id.) Two months later, she "[s]eem[ed] to be quite distraught secondary to upcoming review for disability and had apparently just been denied Social Security benefits." (Id.) She requested "a psych referral secondary to increasing depression in part due to her pain." (Id.) At that psychological interview, psychologists Blake and Kampsnider noted that the plaintiff "referred herself for services on the advice of her physician." (Tr. 538.) She now reported "psychotic features stating she believe[d] that her house is haunted and that she hears and sees spirits in the house." (Id.) She reported a fear of hurting others and herself. She reported that she felt that other people lived within her, stating that she believed she had multiple personalities. She reported that on one occasion she dreamed she had been tied down by demons, and when she awoke she had bruises on her wrist and ankles and blood on herself that she could not explain. She also reported "she had ben rejected by her parents and raised by an Aunt." (Id.) She also reported having been sexually molested by an uncle "while she lived with her grandmother, and reported recent flashbacks of that abuse." (Id.)

This Court finds substantial evidence supports the ALJ's determination regarding the evaluation of psychologists Posey and Steward in two ways. First, the plaintiff's mother had passed away approximately one month before the evaluation, which led to the plaintiff's increased, temporary depression. Second, the plaintiff's own reports regarding her mental impairments and limitations were not credible.

This Court further finds that substantial evidence supports the Appeals Council's determination that the report by psychologists Blake and Kampsnider would not have reasonably changed the ALJ's determination. There is some evidence that the plaintiff's mental impairments increased from the time of her mother's death, shortly before the administrative hearing, through the date of the testing by psychologists Blake and Kampsnider many months later. Therefore, even if this report does support a finding that the plaintiff was disabled as of October, there is still substantial support for the ALJ's determination that she was not disabled as of May 2002.

Further, the ALJ's determination regarding the plaintiff's credibility is entitled to great weight. The United States Court of Appeals for the Fourth Circuit held that "[b]ecause he [ALJ] had the opportunity to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir.

1984)(citing <u>Tyler v. Weinberger</u>, 409 F. Supp. 776 (E.D. Va. 1976).

The ALJ found the plaintiff's complaints about her mental

impairments and limitations were not credible.  The three invalid

MMPIs, and this sudden change in reports of symptoms and reports of

traumatizing life events substantially support the ALJ's

determination in this regard.  According to SSR 96-7p:

> One strong indication of the credibility of an
> individual's statements is their consistency, both
> internally and with other information in the case record.
> The adjudicator must consider such factors as:
>
> The degree to which the individual's statements are
> consistent with the medical signs and laboratory findings
> and other information provided by medical sources,
> including information about medical history and
> treatment.
>
> The consistency of the individual's own statements.  The
> adjudicator must compare statements made by the
> individual in connection with his or her claim for
> disability benefits with statements he or she made under
> other circumstances, when such information is in the case
> record.  <u>Especially, important are statements made to
> treating or examining medical sources and to the "other
> sources" defined in 20 CFR 404.1513(e) and 416.913(e)</u>.
> The adjudicator must also look at statements the
> individual made to SSA at each prior step of the
> administrative review process and in connection with any
> concurrent claim or, when available, prior claims for
> disability benefits under titles II and XVI.  Likewise,
> the case record may contain statements that the
> individual made in connection with claims for other types
> of disability benefits.  However, lack of consistency
> between an individual's statements and other statements
> that he or she made at other times does not necessarily
> mean that the individual's statements are not credible.
> Symptoms may vary in their intensity, persistence, and
> functional effects, or may worsen and improve with time,
> and this may explain why the individual does not always
> allege the same intensity, persistence, or functional
> effects of his or her symptoms.  Therefore, the
> adjudicator will need to review the case record to

determine whether there are any explanations for any
variations in the individual's statements about symptoms
and their effects.

The consistency of the individual's statements with other
information in the case record, including reports and
observations by other persons concerning the individual's
daily activities, behavior, and efforts to work. This
includes any observations recorded by SSA employees in
interviews and observations recorded by the adjudicator
in administrative proceedings.

(emphasis added).

Additionally, there were several reports in the record,
besides at least three separate invalid MMPIs, in which providers
stated that the plaintiff was at least exaggerating regarding her
condition. In 1991, Dr. Weise found that the plaintiff's
subjective complaints exceeded and outweighed the objective
findings. Her personality test result was invalid because she
"responded to the test in an exaggerated fashion claiming symptoms
and attitudes which do not correspond to known psychiatric
conditions." (Tr. at 316.) He stated that the plaintiff
exaggerated her symptoms and did not have a psychiatric impairment.
He also noted that the plaintiff was observed getting out of her
car and "had no problems with her gait," yet walked with a slight
limp at the examination. (Id.) In 1992, while Rosemary Smith,
Psy.D. noted that test results revealed a strong indication of "an
anxiety condition" and "a depressive condition," there was also
"the possibility that [plaintiff's] complaints were exaggerated or
stress-related rather than purely the result of physical health

23

problems." (Tr. 335.) Further, this Court notes that the plaintiff does not provide any further evidence or arguments in her objections.

After a review of the record, this Court finds that substantial evidence supports the ALJ's determination that the plaintiff's statements regarding her impairments and limitations caused by those alleged impairments are not credible. This Court further finds that substantial evidence supports the Appeals Council's determination that the new evidence would not have changed the ALJ's decision.

D.    Mental Residual Functional Capacity

In her motion for summary judgment, the plaintiff argues that the ALJ "failed to make specific findings on a function-by-function basis after arriving at the mental RFC, which robs the RFC of substantial evidentiary support." (Pl.'s Mot. for Summ. J. at 15.) Plaintiff cites SSR 96-8p which provides, in pertinent part:

> When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity.
>
> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CRF 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

RFC is not the <u>least</u> an individual can do despite his or her limitations or restrictions, but the <u>most</u>.

Plaintiff complains that the ALJ did not make findings "with regard to the specific functional limitations [contained in the Posey/Steward assessment] prior to arriving at his RFC for simple, unskilled, routine, repetitive, etc. work. The failure to first make findings with regard to specific mental limitations robs his RFC of substantial evidentiary support." (Pl.'s Mot. for Summ. J. at 15.)

The magistrate judge found that substantial evidence supports the ALJ's determination that the ALJ's limitations took into account all of the functional limitations supported by the record. The plaintiff filed objections to this finding. Specifically, the plaintiff objects to the magistrate judge's finding that the ALJ's mental RFC was in compliance with SSR 96-8p and that the ALJ's mental RFC took into account all of the functional limitations supported by the record. Because the plaintiff filed objections, this Court will perform a <u>de novo</u> review.

The ALJ first found that the plaintiff had severe impairments of depression and anxiety. He found that the impairments satisfied the "A" criteria of the Listings, but did not satisfy the "B" or "C" requirements for disabling mental impairments. As the ALJ reported, the psychological and psychiatric evidence up until the year 2000 showed that the plaintiff had functioned well in her past jobs, both before and after her work-related injury. The evidence

25

revealed that she had episodes of dysthmia, but had never had any regular mental health treatment or a mental condition that would prevent all work activity.

Plaintiff was evaluated by Dr. Fremouw in September 2000. He gave her a diagnosis of major depression, slight episode, mild. The ALJ accorded great weight to Dr. Fremouw's opinion, which found that the plaintiff, despite her situational pressures, was still able to function at a high level of activity.

On September 12, 2000, a state-agency physician completed a psychiatric review technique of the plaintiff. Plaintiff was found to have an impairment that was severe, but not expected to last for twelve months. Specifically, the plaintiff was found to have affective disorder and anxiety-related disorder. (Tr. 373.) Plaintiff's affective disorder was caused by "major depression, single episode, mild." (Tr. 376.) Plaintiff was found to have a slight degree of limitation in her activities of daily living, in her ability to maintain social functioning, and relative to concentration, persistence, or pace. Plaintiff was found to have never experienced an episode of disorientation or decompensation. (Tr. 380.)

On May 22, 2001, Frank D. Roman, Ed.D. completed a psychiatric review technique of plaintiff. He found that the plaintiff had an impairment which was not severe. (Tr. 403.) Specifically, Dr. Roman found that the plaintiff had depression, which is an

affective disorder. (Tr. 406.) Dr. Roman further found that the plaintiff had a mild degree of limitation in her activities of daily living, her ability to maintain social functioning, and her ability to maintain concentration, persistence, or pace. Finally, Dr. Roman found that the plaintiff had experienced no episodes of decompensation.

In February 2002, psychologists Posey and Steward found that the plaintiff had a marked limitation of her activities of daily living, a moderate limitation in her ability to maintain social functioning, and a marked limitation in her ability to maintain concentration, persistence, or pace. They also found that the plaintiff had experienced three repeated episodes of decompensation. (Tr. 503.)

As previously discussed, the evaluation by psychologists Blake and Steward was given appropriate weight in light of the recent death of plaintiff's mother because the ALJ considered the lower global assessment of functioning ("GAF") and some of the limitations only temporary. Additionally, as discussed above, the plaintiff' statements to the evaluators, along with another invalid MMPI, raised questions about her credibility in reporting her symptoms and limitations to those evaluators. This Court finds that it follows that the credibility of findings of psychologists Blake and Steward that the plaintiff's limitations are affected by

the lack of credibility in the plaintiff's reports to them and on the multiple invalid personality tests.

Even when psychologists found that the plaintiff had mental impairments prior to 2002, it was often described as "situational." (Tr. at 29.) For example, in April 2000, plaintiff's treating physician's assistant diagnosed "depression due to psychosocial stressors." One month later, he diagnosed "situational depression." (Id.) In July 2000, treating physician, Kenneth Seen, M.D., diagnosed anxiety and depression, "some of which [was] situational." (Tr. at 29.) In August 2000, Dr. Seen diagnosed "situational stressors." (Id.) In September 2000, plaintiff told Dr. Fremouw that she was taking care of her mother who was non-ambulatory with Alzheimer's disease and had become "increasingly distressed since feeling the responsibility." (Id. at 28.) She reported to him that she quit her job in December 1999 because her legs hurt and her mother was "producing stress." (Id.) She further reported that she had been taking care of her mother full-time since then. In January 2001, PA-C Brian Baker diagnosed chronic pain and depression, "at least in part situational." (Id.) In June 2001, Dr. Seen diagnosed the plaintiff with depression with situational stressors. This Court notes that there is no evidence in the record of long-standing psychological impairments, especially psychosis.

The ALJ found that the plaintiff's symptoms and limitations as reported to psychologists Posey and Steward not entirely credible. Further, the ALJ found that the symptoms she did have were temporary. The ALJ based this finding on the fact that the plaintiff's mother had just died the week before, and because the plaintiff had never mentioned many of those symptoms before, even though she had been referred to a number of psychologists and psychiatrists as part of her workers' compensation claim. This Court notes that there is no evidence in the record that the plaintiff ever went to or requested counseling during the entire relevant time period. The ALJ accorded great weight to the opinion of Dr. Fremouw, who diagnosed the plaintiff with major depression, single episode, mild. The ALJ especially noted that the plaintiff was functioning at a high level of activity despite a great deal of situational pressures, such as caring for her retarded adult brother, her grandfather and her elderly mother who suffered from Alzheimer's disease.

This Court notes that while the ALJ found that the plaintiff's alleged mental limitations were not credible, the ALJ limited the plaintiff's ability to work to an entry level position that is unskilled with routine and repetitive behaviors and one to two step tasks, primarily working with things rather than people. This Court finds that substantial evidence supports the ALJ's

determination that these limitations took into account all of the
functional limitations supported by the record.

## V. <u>Conclusion</u>

Because, after a <u>de novo</u> review, this Court concludes that the
magistrate judge's recommendation is proper and the plaintiff's
objection to the report and recommendation lacks merit, and because
the remaining findings are not clearly erroneous, this Court hereby
ACCEPTS and ADOPTS the magistrate judge's report and recommendation
in its entirety. For the reasons stated above, it is ORDERED that
the summary judgment motion of the plaintiff is hereby DENIED, and
the summary judgment motion of the defendant Commissioner is hereby
GRANTED. Accordingly, it is ORDERED that the plaintiff's
objections to the magistrate judge's report and recommendation are
hereby OVERRULED. It is further ORDERED that this case be
DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum
opinion and order to counsel of record herein. Pursuant to Federal
Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment
on this matter.

DATED:    March 28, 2007


                              /s/ Frederick P. Stamp, Jr.
                              FREDERICK P. STAMP, JR.
                              UNITED STATES DISTRICT JUDGE